IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:11-CV-19-BO

| | | |
|---|---|---|
| RBC BANK (USA), | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| ROBERT A. HEDESH, ROBERT A. | ) | |
| HEDESH, ESQ. LLC, CHICAGO TITLE | ) | |
| INSURANCE COMPANY, ROBERT H. | ) | |
| GWIN, III, GWIN LAW OFFICE, LLC, | ) | |
|       Defendants. | ) | |

This matter is before the Court on Defendants Robert A. Hedesh and Robert A. Hedesh, Esq. LLC ("the Hedesh Defendants")'s Motion to Dismiss for Lack of Jurisdiction and Alternative Motion to Transfer Venue to United States District Court of South Carolina [DE 39] and Defendants Robert H. Gwin, III and Gwin Law Office, LLC ("the Gwin Defendants")'s Motion to Dismiss for Lack of Jurisdiction [DE 44]. Defendant Chicago Title Insurance Company ("Chicago Title") filed a Response on July 22, 2011 [DE 46], and Plaintiff RBC Bank responded to the Hedesh Motion on July 25 [DE 47] and to the Gwin Motion on August 5 [DE 50]. The Hedesh Defendants replied on August 8 [DE 51] and the Gwin Defendants replied on August 18 [DE 52]. Because this Court lacks personal jurisdiction over the Defendants, Defendants' Motions to Dismiss are GRANTED and this action is hereby TRANSFERRED to the United States District Court for the District of South Carolina.

## BACKGROUND

This action invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. This case

arises out of RBC's loan of funds for fifteen transactions involving residential properties in or around Myrtle Beach, South Carolina, which closed between January 17, 2008 and August 19, 2008. Defendant Hedesh was the closing attorney on fourteen of those transactions. Defendant Gwin was the closing attorney on the remaining transaction. RBC does not allege that Hedesh was aware that these transactions were allegedly part of an elaborate mortgage fraud scheme. Rather, it alleges that all of the books and records for Hedesh's real estate trust account were under the exclusive control and in the exclusive custody of Malia McCaffrey, a title insurance agent for Defendant Chicago Title. Hedesh permitted McCaffrey to write checks drawn on this account, to prepare title abstracts on each property, to prepare the HUD-1 for each transaction, to collect borrower contributions and payoff information, and to reconcile and audit his real estate trust account, all without supervision. RBC alleges that McCaffrey was a key participant in the mortgage fraud scheme and that Hedesh's lack of supervision permitted her to skim millions of dollars in loan proceeds for her own benefit and for the benefit of her co-conspirators.

As regards the Gwin transaction, RBC alleges that the Gwin Defendants closed the transaction with third-party funds from Synergy Investments, and not from the buyer. RBC asserts that the Gwin Defendants had constructive knowledge that these funds came from Synergy Investments because the check was drawn on a bank that was far from the buyer's home, the remitter of the check included "Synergy Investments," and Synergy Investments was to receive $49,500 under the HUD-1.

Under the mortgage fraud scheme, straw buyers would be recruited to apply for a loan to purchase property. A fraudulent loan application would be prepared, supported by fake documentation regarding the straw buyer's income or assets. Participation in the scheme would then induce appraisers to produce inflated appraisals. At closing, loan proceeds would be paid out

to participants in the scheme or companies they controlled. Thereafter, the loans went into default with either no payments made on the loan or a few payments made, in the hope that the loans would be sold in to the secondary market or flipped to another purchaser, making them more difficult to trace.

Defendant Chicago Title issued a closing protection letter ("CPL") in connection with several of the fraudulent transactions, which provided that Chicago Title would reimburse RBC Bank for "actual loss incurred...in connection" with a closing conducted by its approved closing attorney when such loss resulted from the attorney's failure to comply with RBC Bank's written closing instructions. RBC Bank alleges that, in violation of its closing instructions requiring that payment be made by the buyer, the Hedesh and Gwin Defendants closed the transactions by allowing the buyer's contribution to be paid by a third party.

RBC alleges that the Hedesh and Gwin Defendants were negligent and breached fiduciary duties in the handling of the closings of the transactions and that they permitted the perpetration of a mortgage fraud scheme against RBC. Additionally, RBC pursues a breach of contract action against Chicago Title, and seeks a declaratory judgment under 28 U.S.C. § 2201 that Chicago Title must indemnify RBC for the alleged losses on the transactions under the terms of the CPLs. Chicago Title, in its amended answer, asserted a claim for subrogation against the Hedesh and Gwin Defendants.

## DISCUSSION

Upon a defendant's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997); *Young v. FDIC*, 103 F.3d 1180, 1191 (4th Cir. 1997). A state may entertain a suit involving a nonresident defendant in two situations. First,

if the foreign party maintains "continuous and systematic" contacts with a state, the state has general personal jurisdiction over the party, and the nonresident may be sued in that state on any claim. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952). When there are no such contacts, a court may assert personal jurisdiction if the litigation arises out of the defendant's contacts with the forum, which is known as specific jurisdiction. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8 (1984). RBC has not argued that the Hedesh or Gwin Defendants maintain continuous and systematic contacts with North Carolina, nor do the facts presented support such a conclusion. Therefore, the Court restricts its analysis to specific jurisdiction.

For a district court to properly assert specific personal jurisdiction over a nonresident, two conditions must be met: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *See Christian Science Bd. Of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Because North Carolina's long-arm statute "is designed to extend jurisdiction over nonresident defendants to the fullest limits permitted by the Fourteenth Amendment's due process clause," these inquiries collapse into one. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

This Court may exercise personal jurisdiction consistent with due process only if the defendants have "minimum contacts" with the forum, such that to require them to defend their interests in North Carolina "does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In addition, the defendants must have "purposely availed" themselves of the privilege of conducting business within the forum state, giving them "fair warning that a particular activity may subject [them] to the

jurisdiction of a foreign sovereign." *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009).[1]

## I. Minimum Contacts and Purposeful Availment

A sovereign's exercise of power over a foreign defendant requires some act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In this case, Mr. Hedesh is a resident of South Carolina, licensed to practice law in that state. His law firm is a limited liability company organized and existing under the laws of South Carolina. Each of the properties at issue is located in South Carolina and all of the closings were conducted there. Aside from the location of RBC's office, only two contacts connect this action to North Carolina: (a) two buyers, who were North Carolina residents, reached out to Mr. Hedesh after being referred by a South Carolina mortgage company; and (b) Malia McCaffrey, a title agent for Chicago Title in South Carolina, returned some loan packages to RBC at its Rocky Mount, North Carolina address.

Mr. Gwin is a resident of South Carolina. His law firm is a South Carolina limited liability company with its principal place of business in Myrtle Beach, South Carolina. All of the conduct that purportedly gave rise to claims by RBC and Chicago Title occurred in South Carolina. Neither Mr. Gwin nor his firm owns or operates any property or office in North

---

[1] The United States Supreme Court recently reiterated the importance of these inquiries in two cases, *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011). In *Nicastro*, the Court required a forum-by-forum analysis, noting that "[p]ersonal jurisdiction, of course, restricts 'judicial power not as a matter of sovereignty, but as a matter of individual liberty,' for due process protects the individual's right to be subject only to lawful power." *Nicastro*, 131 S. Ct. at 2789 (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

Carolina, and no employees reside in North Carolina. They do not conduct business in North Carolina. Only the location of RBC's office and sending the loan package to that office connects this action to North Carolina.

As to both Mr. Hedesh and Mr. Gwin and their respective law firms, buyers solicited RBC to agree to loan them funds for their South Carolina properties. The Hedesh and Gwin Defendants did not reach out to RBC to serve as the lenders in these transactions. Once the buyers had later selected Mr. Hedesh or Mr. Gwin as their closing attorney, RBC gave instructions to the attorneys on closing the loans.

The only contacts with North Carolina in this case are the location of RBC's office in Rocky Mount, and the residence of two buyers. Although the closing instructions do reference RBC's North Carolina address, they do not contain any forum selection clause, indicating where suit would be brought in the event of non-compliance.[2] RBC attaches great importance to the fact that the Hedesh and Gwin Defendants communicated with its employees located in Rocky Mount. However, the Fourth Circuit has noted that "the mere fact that emails, telephone calls, and faxes were employed does not, of itself, alter the minimum contacts analysis. The analysis must focus on the nature, quality, and quantity of the contacts, as well as their relation to the forum state." *Consulting Engineers Corp. v. Geometric, Ltd.*, 561 F.3d 273, 279 n. 5 (4th Cir. 2009). In *Consulting Engineers*, the court held that the defendants' lack of offices, employees, and property in the forum state, viewed in conjunction with the lack of in-person contact and the fact that all

---

[2]The HUD-1 settlement statements do, in fact, contain RBC's Rocky Mount, North Carolina address. However, they also reference the address of the borrower and the address of the property. The settlement statements refer to the property location, the place of settlement, and the addresses of the borrower, the seller, and the lender [DE 47-5]. In other words, the idea that a putative defendant would have reason to believe that he could be haled into court in any of the states represented on these forms is contrary to due process's attention to "fair play and substantial justice."

relevant conduct had taken place elsewhere, dictated its result that the forum lacked personal jurisdiction over them. *Id.* at 279-80. In corresponding with RBC representatives in North Carolina, these Defendants did not purposefully avail themselves of the privilege of doing business there. The paperwork sent to the Hedesh and Gwin Defendants did not include a forum-selection clause, was labeled "Master Closing Instructions - Multistate" (indicating that it did not specifically apply North Carolina law), and referenced North Carolina only insofar as it was the location of RBC Bank's offices [DE 50-2].

As noted by the Eastern District of Pennsylvania in a recent case, "to place jurisdictional significance on the location of a bank from which funds were remotely transmitted ignores the realities of modern banking. Accepting payment from a bank or client in a particular state does not constitute purposeful availment of privileges in that state for purposes of personal jurisdiction." *Wilmington Finance, Inc. v. Tom L. Moonis, P.C.*, 2008 WL 4661033, at *5 (E.D.Pa. Oct. 21, 2008). In *Moonis*, the court dismissed the action for lack of personal jurisdiction because an out-of-state lawyer performing out-of-state closings for an out-of-state property on behalf of a forum state lender is not automatically subjected to personal jurisdiction in the lender's state. *Id.* There, the plaintiff, a Delaware lender with its principal place of business in Pennsylvania, hired Moonis, a New York lawyer, to perform eleven closings in New York. When suit was brought against Moonis in Pennsylvania, the court held that the mere existence of the contractual relationship between the parties was insufficient to establish minimum contacts. *Id.* at *4. It described Pennsylvania's connection to the closing as "at most, tangential" and did not find the sending of documents to Pennsylvania to change its analysis. *Id.* at *6. Similarly, the mere existence of closing instructions sent by RBC Bank to the Hedesh and Gwin Defendants is insufficient to establish personal jurisdiction over them in North Carolina.

## II. Fair Play and Substantial Justice

Furthermore, even if this Court were to hold that minimum contacts with the state of North Carolina existed, requiring Defendants to litigate this case in North Carolina does not comport with fair play and substantial justice. *See Int'l Shoe Co.*, 326 U.S. at 316. In determining whether the exercise of jurisdiction is consistent with due process, the Court considers five factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the efficient resolution of conflicts between states, and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994) (citing *Hanson*, 357 U.S. at 253 (1958); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); and *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).

In this case, the burden on Defendants to litigate in North Carolina would be significant. The people and organizations involved in the closings are primarily South Carolina residents. Mr. Hedesh names seventeen relevant individuals and corporations in his Motion who may be called as witnesses and who are residents of or incorporated in South Carolina. By litigating in North Carolina, Defendants' efforts to compel witnesses to testify may be defeated by operation of Federal Rule of Civil Procedure 45, allowing subpoenas to be quashed which require witnesses to travel more than 100 miles to testify.[3]

Although North Carolina does have an interest in protecting its banks from fraud, this

---

[3] The Court is not persuaded that South Carolina's statute allowing apportionment of fault among all defendants is relevant to the instant Motion. *See* S.C. Code § 15-38-15(B)(2005). Even if this case proceeds in South Carolina, there is no indication that it would be consolidated with the civil RICO action already proceeding there. Assuming that it is not, those defendants would still be "non-party wrong-doers," and Defendants admit that any apportionment of fault would depend on the District of South Carolina's interpretation of the statute.

interest is based on the plaintiff's identity, and personal jurisdiction is a defendant-based inquiry. North Carolina does not have an interest in deciding the negligence of South Carolina attorneys who performed closings in South Carolina for South Carolina properties, pursuant to South Carolina law.

RBC can as easily obtain relief in South Carolina as it can in North Carolina, therefore its interest in obtaining relief is not a factor weighing in favor of jurisdiction in this Court.

Because more of the Defendant-centered contacts are in South Carolina, allowing the case to proceed in South Carolina would better further the efficient resolution of controversies as between states.

Finally, the interest in furthering the fundamental substantive social policy of discouraging fraud in mortgage closings is not effectuated through litigation in North Carolina. South Carolina has a significant interest in adjudicating the application of its standards of conduct for lawyers, particularly when the transactions at issue occurred in South Carolina for the purchase of South Carolina homes.

### III. Transfer of Venue

Because the Court holds that it lacks personal jurisdiction over these Defendants, it hereby transfers this matter to the District of South Carolina, pursuant to 28 U.S.C. § 1404(a), so as to avoid any injustice that may result from any expiration of the applicable statute of limitations. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962).

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In determining whether transfer is appropriate, this Court considers: (1) the plaintiff's initial choice of forum; (2) the residence of the parties; (3) the relative

ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of a judgment, if obtained; (7) the relative advantages and obstacles to a fair trial; (8) other practical problems that make a trial easy, expeditious, and expensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of unnecessary problems with conflict of laws. *See Hardee's Food Sys., Inc. v. Rosenblatt*, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998).

Here, only RBC's initial choice of forum, its North Carolina incorporation and principal place of business weigh against litigation in South Carolina. All other factors are either neutral or weigh (in some cases, heavily) in favor of litigation in the District of South Carolina, as noted above. As a result, this Court exercise its authority to transfer venue over the entire action to that court.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss [DE 39, 44] are GRANTED. The Clerk of Court is hereby DIRECTED to TRANSFER this action, in its entirety, to the United States District Court for the District of South Carolina.

SO ORDERED, this the __13__ day of October, 2011.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE